**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

**REBECCA OLIVER,**
414 Water St., Unit 2110
Baltimore, MD 21202

on her own behalf and on behalf of all others similarly situated,

Plaintiff,

v.

**WEIGHTLESS MEDICAL LLC d/b/a WEIGHTCARE**
2950 Griffin Rd
Fort Lauderdale, FL 33312

Defendant.

CIVIL ACTION NO. ____________

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

1. Plaintiff Rebecca Oliver ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendant Weightless Medical LLC d/b/a WeightCare ("WeightCare" or "Defendant") to recover statutory damages, attorneys' fees, and costs arising from Defendant's transmission of commercial emails containing false or misleading information in the subject line, in violation of the Maryland Commercial Electronic Mail Act, Md. Code Ann., Com. Law §§ 14-3001, *et seq*. Plaintiff makes the following allegations upon information and belief, except as to her own actions, the investigation of her counsel, and facts that are a matter of public record.

## NATURE OF THE ACTION

2. This is a class action against WeightCare for false and misleading email marketing.

3. WeightCare sends marketing emails that misrepresent the duration and availability of its promotions, in an apparent effort to drive sales by creating a false sense of urgency and scarcity. The subject lines of these emails falsely claim that a discount is about to expire and that only a limited quantity of programs remains available—such as "Only 100 Left, Then That's It"—when, in reality, WeightCare had already planned to, and did, continue the identical promotion well beyond the represented deadline and represented inventory limit, expressly telling recipients days later that the offer had been "Extended."

4. WeightCare's practice of sending emails with subject lines that misrepresent a promotion's deadline or availability, when the promotion in fact continues beyond the represented deadline, violates the Maryland Commercial Electronic Mail Act, Maryland Code Annotated, Commercial Law §§ 14-3001, *et seq.* ("MCEMA").

5. The fact that such deadline and limited-quantity statements are false and misleading has been recognized by the Federal Trade Commission, which directs that sellers should not "make a 'limited' offer which, in fact, is not limited." 16 C.F.R. § 233.5; *see also Brown v. Old Navy, LLC*, 567 P.3d 38 (Wash. 2025) (recognizing that such false or misleading emails violate Washington's Commercial Electronic Mail Act, Revised Code of Wash. §§ 19.190.020, *et seq.*, the statute upon which MCEMA was based).

6. By sending emails with subject lines containing false and misleading information to Plaintiff and the Class (defined below), WeightCare violates MCEMA.

7. By sending these false and misleading emails, WeightCare intends to deceive the recipients.

8. Plaintiff brings this action as a class action on behalf of persons residing in Maryland, to whom WeightCare sent emails with false and/or misleading subject lines. Plaintiff's

requested relief includes an award to Plaintiff and Class Members of statutory damages for each illegal email, and an award of attorneys' fees and costs.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), because this is a putative class action in which (i) the proposed Class contains more than 100 members; (ii) at least one member of the proposed Class is a citizen of a State different from Defendant; and (iii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

10. Minimal diversity exists under CAFA. Plaintiff is domiciled in, and therefore a citizen of, the State of Maryland. On information and belief, Defendant is not a citizen of Maryland; Defendant conducts business from, and maintains a business address at, 2950 Griffin Rd, Fort Lauderdale, Florida 33312. Accordingly, at least one member of the proposed Class—Plaintiff—is a citizen of a State different from Defendant. *See* 28 U.S.C. § 1332(d)(2)(A), (d)(10).

11. The proposed Class contains more than 100 members. As alleged below, on information and belief, WeightCare sent the emails at issue in this litigation to thousands of Maryland residents. Accordingly, the number of members of the proposed Class exceeds the 100-member threshold set forth in 28 U.S.C. § 1332(d)(5)(B).

12. The aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. MCEMA § 14-3003(1) provides for statutory damages of $500 per violation. Plaintiff's own individual claim, based on the two Subject Emails identified to date, already totals at least $1,000. On information and belief, WeightCare's practice of sending commercial emails with false or misleading deadline and scarcity claims is not limited to the two Subject Emails identified herein, but is a recurring practice that WeightCare has employed against thousands of Maryland residents,

on a regular basis, throughout the three-year Class period. Given the size of the proposed Class and the frequency of WeightCare's recurring email promotions and applying the $500 statutory damages figure set forth in MCEMA § 14-3003(1), the aggregate amount in controversy for the Class, exclusive of interest and costs, plausibly exceeds $5,000,000. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (a plausible allegation that the amount in controversy exceeds the jurisdictional threshold is sufficient; no evidentiary support is required).

13. None of the exceptions to CAFA jurisdiction set forth in 28 U.S.C. §§ 1332(d)(3)-(4) applies because, on information and belief, Defendant is not a citizen of the State of Maryland, the state in which this action is filed.

14. This Court has personal jurisdiction over Defendant pursuant to Fed. R. Civ. P. 4(k)(1)(A) and Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1)-(3), as WeightCare systematically and continually transacts business in Maryland by marketing, selling, and shipping its weight-loss programs and medications to Maryland residents, including Plaintiff; this case arises, in part, out of a transaction that took place within Maryland; and WeightCare contracts to supply goods or services in Maryland.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, where Plaintiff resides and received the Subject Emails (defined below).

16. This action is properly assigned to the Northern Division of this Court because Plaintiff resides in, and received the Subject Emails in, Anne Arundel County, which lies within the Northern Division. *See* 28 U.S.C. § 100.

## PARTIES

17. Plaintiff Rebecca Oliver is a natural person who resides in Annapolis, MD (Anne Arundel County) and is a citizen of the State of Maryland.

18. Defendant Weightless Medical LLC is, on information and belief, a limited liability company doing business within this state under the trade name "WeightCare," with a business address of 2950 Griffin Rd, Fort Lauderdale, FL 33312. On information and belief, Defendant is not a citizen of the State of Maryland for purposes of 28 U.S.C. § 1332(d)(10). WeightCare's own website Terms & Conditions also reference an affiliated or related entity, "Weightless Medical Logistics, Inc.," at 1126 S. Federal Hwy, Unit #931, Fort Lauderdale, FL 33316, as the provider of the WeightCare service. Plaintiff will amend this Complaint to name any additional or more precisely identified corporate defendant as discovery and further investigation warrant.

## FACTUAL ALLEGATIONS

### A. MCEMA prohibits initiating or conspiring to initiate the transmission of commercial emails with false or misleading information in the subject lines.

19. MCEMA, by its terms, regulates deceptive email marketing.

20. MCEMA was enacted to protect consumers' interests in being free from deceptive commercial emails.

21. An injury occurs under MCEMA any time a commercial email is transmitted that contains false or misleading information in the subject line.

22. Under MCEMA, it is irrelevant whether misleading commercial emails were solicited.

23. MCEMA creates an independent, limited, private right of action, which can be asserted by a person who is the recipient of a commercial electronic mail message which contains

false or misleading information in the subject line that has the capacity, tendency, or effect of deceiving the recipient. *See, e.g.,* MCEMA § 14-3003.

24. Violations of MCEMA create standalone causes of action.

25. MCEMA was modeled on Washington's Commercial Electronic Mail Act, Revised Code of Washington §§ 19.190.020, *et seq.*, and the two statutes share materially identical prohibitions on false or misleading information in the subject line of a commercial email. Md. Code Ann., Com. Law § 14-3002 should therefore be construed consistently with Washington's statute.

26. In *Brown v. Old Navy, LLC*, 567 P.3d 38 (Wash. 2025), the Washington Supreme Court held that this prohibition reaches any false or misleading information in a commercial email's subject line and is not limited to information that disguises the commercial nature of the email.

27. The false and misleading information in WeightCare's subject lines was material to Plaintiff and the Class. WeightCare uses deadline and limited-quantity claims in its subject lines because they work—a subject line warning that a sale is about to end, and that only a limited number of programs remain, makes recipients more likely to open the email and make a purchase before, they believe, the opportunity disappears. Because those claims drive whether a recipient opens the email and shops, the truth of the claims matters to the recipient.

**B. <u>WeightCare initiated (or conspired to initiate) the transmission of commercial emails with false or misleading subject lines.</u>**

28. WeightCare has initiated (or conspired to initiate) the transmission of commercial electronic mail messages with false or misleading information in the subject lines to Plaintiff and Members of the Class.

29. The emails were electronic mail messages, in that they were each an electronic message sent to an electronic mail address; the emails from WeightCare also referred to an internet domain, whether or not displayed, to which an electronic mail message can or could be sent or delivered.

30. WeightCare sent the emails for the purpose of promoting its weight-loss programs and medications for sale.

31. The emails were sent at WeightCare's direction and were approved by WeightCare.

32. WeightCare's emails frequently advertise the "limited" or "ending" nature of its discounts, and the limited quantity of programs available at a given price, without disclosing, in the subject line itself, that the represented deadline or quantity limit is false. Examples of such emails sent to Plaintiff are set forth in the table below.

33. By stating that a discount is ending at a specific time and that only a limited number of programs remain, WeightCare suggests an offer's rarity and urgency, stimulating consumers' desire to get the deal before it's gone while simultaneously inducing fear of missing a good buy.

34. WeightCare designs the subject lines of its marketing emails to tap into these consumer urges.

35. The fact that such statements are false and misleading has been recognized by the Federal Trade Commission. Sellers should not "make a 'limited' offer which, in fact, is not limited." 16 C.F.R. § 233.5; *see also Brown v. Old Navy*.

36. WeightCare uses the purportedly limited nature of these offers to send more emails to consumers, and to drive more purchases, than it otherwise might.

### C. **<u>WeightCare violates MCEMA by sending emails with subject lines that falsely represent a promotion's deadline and availability.</u>**

37. WeightCare regularly sends emails with subject lines representing that a discount is ending imminently and that only a limited quantity remains available—using phrases such as "Only 100 Left, Then That's It"—when, in truth, the same promotion continues beyond the stated deadline, and WeightCare's own follow-up email admits the promotion has been "Extended."

38. For example, on August 24, 2026, WeightCare sent Plaintiff an email with the subject line "Only 100 Left, Then That's It," stating: "Your $300 off ends tomorrow, and we only have 100 programs left at this rate. Once they're gone, they're gone." Two days later, on August 26, 2026, WeightCare sent Plaintiff a second email with the subject line "We Extended It: 48 More Hours," stating that WeightCare was extending the identical $300-off, code "PROMO300" promotion for 48 more hours. Both emails' fine print described the same underlying promotional period as "valid from 08/06/26 at 12:01 a.m. until 08/26/26 at 3:00 a.m. EST"—confirming that WeightCare had already planned for the promotion to continue past the "ends tomorrow" and "100 left" representations made in the first email, and that the "extension" announced in the second email was not a genuine, last-minute accommodation but a continuation of a single, ongoing promotional campaign.

39. Notably, WeightCare sent the "extension" email at approximately 10:00 a.m. on August 26, 2026—more than seven hours after the very deadline stated in the fine print of both emails, 3:00 a.m. EST on August 26, 2026, had already passed. By the time WeightCare told Plaintiff that the promotion had been "Extended," the promotional period described in WeightCare's own fine print had already expired. This confirms that the represented deadline was not a genuine, enforced cutoff, and that WeightCare controlled—and could unilaterally alter—the promotion's actual end date without regard to the deadline represented in its subject lines.

40. The subject lines of these emails were false and misleading because the represented deadline and represented inventory limit had no relationship to when the promotion actually ended—WeightCare already planned to continue the promotion beyond the stated deadline when it sent the first email.

**D. <u>WeightCare sends commercial emails to consumers whom it knows, or has reason to know, reside in Maryland.</u>**

41. WeightCare sent the misleading commercial emails to email addresses that WeightCare knew, or had reason to know, were held by Maryland residents, either because (i) WeightCare had a physical address associated with the recipient based on past purchases; (ii) WeightCare had access to data regarding the recipient indicating which state they resided in; or (iii) information was available to WeightCare upon request from the registrant of the internet domain name contained in the recipient's electronic mail address.

42. First, for any person that places an order through WeightCare's website, WeightCare associates an email address with a shipping address and/or billing address for that order.

43. Second, WeightCare encourages its customers to create online accounts and maintain ongoing subscriptions. Customers save information in their WeightCare accounts along with their email address, such as shipping addresses, billing addresses, and phone numbers.

44. Third, on information and belief, WeightCare employs methods to track the effectiveness of its marketing emails and to identify consumers who click on links contained in WeightCare's marketing emails, including by identifying their physical location.

45. Fourth, on information and belief, WeightCare utilizes cookies, pixels, and other online tracking technologies to identify and locate the consumers who click on links contained in WeightCare's marketing emails and who visit its website.

46. Fifth, WeightCare's own marketing emails represent that WeightCare is "able to serve customers in all states except AK, HI, LA, MS," confirming that WeightCare tracks, by state, which customers it may lawfully serve, including Maryland residents such as Plaintiff.

47. At the time it sent the emails with false and misleading subject lines, WeightCare had access to the data described above regarding the location of consumers in Maryland to whom it sent the emails.

### E. WeightCare initiated (or conspired to initiate) the transmission of illegal emails to Plaintiff and Members of the Class.

48. At all times relevant to this Complaint, Plaintiff resided in Maryland.

49. On October 17, 2024, Plaintiff purchased a WeightCare weight-loss program through WeightCare's website. In connection with that purchase, Plaintiff provided her email address, shipping address, and billing address to WeightCare and enrolled in WeightCare's email marketing program.

50. Plaintiff maintains an account with WeightCare that reflects her home address in the State of Maryland.

51. WeightCare shipped Plaintiff's October 2024 order to her address in Maryland.

52. WeightCare knew, or had reason to know, that Plaintiff's email address is held by a Maryland resident because, among other things, (i) Plaintiff provided her shipping and billing address to WeightCare in connection with her October 2024 purchase; (ii) Plaintiff maintains an account with WeightCare reflecting her home address in Maryland; and (iii) WeightCare shipped Plaintiff's order to her address in Maryland.

53. Since her October 2024 purchase, Plaintiff has continued to receive commercial marketing emails from WeightCare, including recurring sale promotions in addition to the Subject Emails identified below.

54. MCEMA was enacted to protect Maryland residents from precisely this kind of deceptive commercial email. Each Subject Email consumed Plaintiff's time and attention and occupied space in her inbox—the very harms the statute is designed to prevent.

55. WeightCare sent the following emails to Plaintiff representing that a promotional discount was ending imminently and that only a limited quantity remained available, when in fact the same promotion continued and was expressly extended (the "Subject Emails"):

| Date | Subject Line | Nature of Falsity / Misrepresentation |
|---|---|---|
| 8/24/2026 12:02 PM | "Only 100 Left, Then That's It" | Subject line, together with the body of the email, represented that Plaintiff's $300-off promotion would end "tomorrow" and that only 100 weight-loss programs remained available "at this rate," implying genuine, imminent scarcity. In truth, WeightCare's own fine print already described the promotional period as continuing through August 26, 2026, and WeightCare extended the identical promotion two days later. |
| 8/26/2026 10:00 AM | "We Extended It: 48 More Hours" | Confirms that the "ends tomorrow" and "100 left" representations made in the preceding email were false: the identical $300-off PROMO300 promotion that had been represented as about to end, and nearly sold out, was instead extended for 48 more hours. |

56. WeightCare sent the Subject Emails identified in the table above for the purpose of promoting WeightCare's weight-loss programs and medications for sale.

57. WeightCare initiated the transmission or conspired to initiate the transmission of the Subject Emails to Plaintiff.

58. The Subject Emails are representative examples of the false and misleading commercial emails Plaintiff has received from WeightCare. Plaintiff has identified at least two (2) such emails to date. These examples are not exhaustive; on information and belief, WeightCare sent Plaintiff and Members of the Class additional commercial emails with false or misleading

subject lines, and Plaintiff's investigation of WeightCare's other recurring sale promotions is ongoing.

59. WeightCare has engaged in the conduct described above since at least Plaintiff's October 2024 enrollment and continues to do so.

## CLASS ACTION ALLEGATIONS

60. Plaintiff brings this action, both individually and as a class action, on behalf of similarly situated recipients of commercial electronic mail sent by WeightCare pursuant to Fed. R. Civ. P. 23(b)(3) and seeks to represent the following Class, defined as:

> All Maryland residents to whom WeightCare sent, within three years before the date of the filing of this complaint until the date of trial, an email with a subject line that states or implies that a particular promotion will end at a specified time or that only a limited quantity of a product or program remains available, when the promotion will actually continue beyond the specified end time, or the represented quantity limit does not reflect a genuine, binding limitation on availability.

Excluded from the Class are Defendant, as well as Defendant's affiliates, employees, officers and directors, and the Judge to whom this case is assigned.

61. The Class, as defined above, is identifiable, and Plaintiff is a Member of the Class.

62. *Numerosity*. The Members of the Class are so numerous that joinder of all Members is impracticable. Fed. R. Civ. P. 23(a)(1). On information and belief, WeightCare sent the false and misleading commercial emails described above to thousands of Maryland residents. WeightCare markets and sells its weight-loss programs nationally, including to Maryland residents, and sends marketing emails to its customers on a regular basis. The precise number of Class Members is presently unknown but is readily ascertainable from WeightCare's own records. At a minimum, the Class consists of well more than 50 persons.

63. *Commonality*. There are questions of law and fact common to the Class. Fed. R. Civ. P. 23(a)(2). These common questions include, but are not limited to:

(a) Whether the emails WeightCare sent to the Class are subject to MCEMA §§ 14-3001, *et seq.*;

(b) Whether the subject lines of emails sent by WeightCare contain false or misleading information that has the capacity, tendency, or effect of deceiving the recipient, in violation of MCEMA § 14-3002;

(c) Whether WeightCare knew, or should have known, that the recipients of those emails were residents of Maryland;

(d) Whether WeightCare is subject to the $500 penalty set forth in MCEMA § 14-3003 for each email it sends containing false or misleading information in the subject line;

(e) Whether Plaintiff and the Class are entitled to statutory damages, attorneys' fees, and costs; and

(f) The nature and extent of class-wide injury and damages.

64. *Typicality*. Plaintiff's claims are typical of the claims of the Class. Fed. R. Civ. P. 23(a)(3). Plaintiff, like every other Member of the Class, received commercial emails from WeightCare bearing subject lines that contained the same category of false or misleading information, and Plaintiff's claims arise from the same course of conduct and the same legal theories as those of the Class.

65. *Adequacy*. Plaintiff will fairly and adequately protect the interests of the Class. Fed. R. Civ. P. 23(a)(4). Plaintiff has no interests antagonistic to, or in conflict with, the interests of the Class; is committed to vigorously prosecuting this action; and has retained counsel experienced in handling consumer class actions and complex consumer litigation.

66. *Predominance*. Questions of law and fact common to the Class predominate over any questions affecting only individual Members. Fed. R. Civ. P. 23(b)(3). The central questions—whether WeightCare's subject lines contained false or misleading information and whether WeightCare is liable for statutory damages under MCEMA—are common to the Class and can be resolved with common, largely documentary evidence drawn from WeightCare's own email and marketing records.

67. *Superiority*. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Fed. R. Civ. P. 23(b)(3). Because each individual claim involves a relatively small amount, the cost of prosecuting individual actions would be prohibitive, and the likelihood that individual Class Members would prosecute separate actions is remote. Class treatment presents no unusual difficulties of management and conserves the resources of the parties and the Court.

68. *Ascertainability*. The Class is readily ascertainable. The identities of Class Members and the emails they received can be determined from WeightCare's own marketing, email-service-provider, and customer records.

## CAUSE OF ACTION

## COUNT ONE

**(Violation Of Maryland Commercial Electronic Mail Act §§ 14-3001, *et seq.*)**

69. Plaintiff re-alleges and incorporates by reference the allegations set forth herein, and further alleges:

70. The Maryland Commercial Electronic Mail Act ("MCEMA") § 14-3001 defines "Commercial Electronic Mail" as "electronic mail that advertises real property, goods, or services for sale or lease."

71. The Subject Emails are "Commercial Electronic Mail," as the purpose of those emails was to advertise WeightCare's weight-loss programs and medications for sale.

72. MCEMA § 14-3002(b) contains the following prohibition related to Commercial Electronic Mail: "A person may not initiate the transmission [that] is sent to an electronic mail address that the sender knows or should have known is held by a resident of the State[, which] [c]ontains false or misleading information in the subject line that has the capacity, tendency, or effect of deceiving the recipient."

73. WeightCare is the person that initiated the transmission of the Subject Emails.

74. MCEMA § 14-3002(c) contains the following presumption: "[a] person is presumed to know that the intended recipient of commercial electronic mail is a resident of the State if the information is available on request from the registrant of the Internet domain name contained in the recipient's electronic mail address."

75. Information concerning the residency of Plaintiff and Members of the Class is (and was) available on request from the registrant of the Internet domain name contained in Plaintiff's and Members of the Class's electronic mail address.

76. Plaintiff and Members of the Class have provided WeightCare with a shipping address and/or billing address and/or phone number with respect to orders made by Plaintiff and Members of the Class.

77. Plaintiff and Members of the Class created online accounts, where they saved information regarding their shipping address, billing address, and phone number.

78. At the time it sent the Subject Emails, WeightCare had access to the data described above regarding the location of consumers in Maryland to whom it sent the emails.

79. Defendant had reason to believe that all individuals (a) with a Maryland based area code, including 240, 301, 410, 443, or 667 were residents of Maryland at the time the Subject Emails were sent; and (b) who provided a Maryland shipping or billing address to WeightCare in connection with a purchase were residents of Maryland at the time those emails were sent.

80. Plaintiff and Members of the Class are and were, in fact, residents of Maryland at the time WeightCare transmitted the Subject Emails.

81. Plaintiff and Members of the Class were the intended recipients of the Subject Emails.

82. WeightCare knew or should have known that Plaintiff and Members of the Class, the intended recipients of the aforementioned emails, are (and were) residents of the State of Maryland when WeightCare sent the emails.

83. MCEMA § 14-3003(1) provides that "[a] person who violates this subtitle is liable for reasonable attorney's fees and for damages . . . [t]o the recipient of commercial electronic mail, in an amount equal to the greater of $500 or the recipient's actual damages[.]"

84. Under MCEMA, it is irrelevant whether the aforementioned emails were solicited.

85. In violation of MCEMA § 14-3002, the Subject Emails contained a subject line with false or misleading information, in the ways described above.

86. WeightCare's sending of each Subject Email is a discrete violation of MCEMA § 14-3002.

87. Because the Subject Emails contained false or misleading information in their subject lines, Plaintiff's claims are not preempted by the federal CAN-SPAM Act, 15 U.S.C. §§ 7701, *et seq.*, which does not preempt state statutes to the extent they prohibit falsity or deception in commercial electronic mail. 15 U.S.C. § 7707(b)(1).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment as follows:

A. An order assuming jurisdiction of this case;

B. An order certifying the Class under Fed. R. Civ. P. 23(b)(3);

C. An order appointing Plaintiff as representative of the Class, and undersigned counsel as Class counsel for the Class;

D. An order awarding statutory damages pursuant to MCEMA § 14-3003 ($500 per violation) for Plaintiff and the Members of the Class;

E. An award of attorneys' fees, pursuant to MCEMA § 14-3003;

F. An award of pre-judgment and post-judgment interest on all sums awarded to Plaintiff and the Members of the proposed Class; and

G. Such other relief as the Court deems appropriate.

Plaintiff states that her individual claim for relief under MCEMA § 14-3003 totals at least $1,000, based on the at least two (2) emails specifically identified to date ($500 per email), and will increase to the extent additional violating emails are identified through discovery, exclusive of the claims of absent Class Members.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38, Plaintiff demands a jury trial on all issues so triable.

Dated: September 24, 2026

Respectfully submitted,

*/s/ Gary E. Mason*

Gary E. Mason
(MD Bar No. 15033)
Danielle L. Perry
(MD Bar No. 2602051015)
**MASON & PERRY LLP** (*Local Office*)
7315 Wisconsin Avenue, Suite 400W
Bethesda, MD 20814-3224
Telephone: (202) 429-2290
gmason@masonllp.com
dperry@masonllp.com

**MASON & PERRY LLP** (*Main Office*)
5335 Wisconsin Avenue NW, Suite 640
Washington, DC 20015

*Attorneys for Plaintiff*